Mary Ann Grimes, Executrix of Mary Ann Lund, deceased, Executrix of George Lund, deceased, v. The Pennsylvania Railroad Company, Appellant.

*Executors and administrators—Foreign executor—Corporations—Transfer of stock.*

An executrix of an executrix of an English citizen dying resident in England is entitled to transfer stock of a corporation of this commonwealth without any grant to her of letters of administration de bonis non cum testamento annexo, either in England or in Pennsylvania.

Argued Jan. 18, 1899. Appeal, No. 291, Jan. T., 1898, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1898, No. 139, on case stated. Before Sterrett, C. J., Green, McCollum, Mitchell and Fell, JJ. Affirmed.

Case stated to determine the right to transfer shares of stock. The following facts appear from the case stated:

On the books of the Pennsylvania Railroad Company, 510 shares of its capital stock stood, on March 10, 1898, in the name of George Lund, who, a resident in and a citizen of Great Britain, had died in England, on June 5, 1888, leaving a last will, by which he gave all his personal estate to his widow, Mary Ann Lund, and appointed her sole executrix. This will was duly probated in the high court of justice of England, and letters testamentary thereon were issued by said court to his widow, Mary Ann Lund. The latter, also a resident of Great Britain, died on May 20, 1897, domiciled in England, leaving a last will, by which she devised and bequeathed all her residuary estate to her daughter, Mary Ann Grimes, and appointed her sole executrix under her will. This will was duly admitted to pro-

bate in the high court of justice in England, and letters of administration on the estate of Mary Ann Lund, but not upon that of George Lund, were granted by said probate court to Mrs. Grimes. By virtue of her office, as executrix of the executrix of George Lund, she demanded to be permitted to transfer the shares of stock which had belonged to the latter. The company refused.

ARNOLD, P. J., filed the following opinion:

At common law, upon the death of an executor, the executorship devolved upon his executor; and upon the death of one or more joint executors, it devolved upon the survivors and passed ultimately, upon the death of the last survivor, to his executor. Upon the death of the executor of an executor, the executorship passed to his executor, and so long as the chain of representation remained unbroken by an intestacy, the ultimate executor represented every preceding testator: 7 Am. & Eng. Ency. of Law, title Executors and Administrators (ed. 1889), 204. In 2 Blackstone's Commentaries, * 506, the law and the reason of it is thus clearly stated: " The interest vested in the executor by the will of the deceased may be continued and kept alive by the will of the same executor, so that the executor of A's executor is to all intents and purposes the executor and representative of A himself; but the executor of A's administrator or the administrator of A's executor is not the representative of A; for the power of an executor is founded upon the special confidence and actual appointment of the deceased; and such executor is therefore allowed to transmit that power to another in whom he has equal confidence; but the administrator of A is merely the officer of the ordinary, prescribed to him by act of parliament, in whom the deceased has reposed no trust at all; and therefore, on the death of that officer, it results back to the ordinary to appoint another." Other text writers state the law the same way. See Wentworth on the Office and Duty of Executors (14th ed.), 462; 1 Williams on Executors (9th ed.), 293, and 3 Redfield on Wills, 73, pl. 17. This is the law of England at this time, and also of some of the American states, as may be seen by reference to Woerner on the American Law of Administration, section 350, and note, and Williams on Executors, 293, and note. It was

also the law of Pennsylvania until the Act of March 15, 1832, P. L. 135, section 6, restricted administration of goods within this commonwealth to persons appointed here, by providing that no letters testamentary or of administration, granted out of this commonwealth, shall confer any of the powers and authorities possessed by an executor or administrator under letters granted within this state. But to furnish means of administering the estates of citizens of any other state or country, it was provided in the 12th section of the same act, that copies of wills and testaments proved in any other state or country according to the laws thereof, and duly authenticated, and of the letters testamentary or other authority to administer issued thereon, duly attested, shall be deemed sufficient proof for granting letters testamentary or of administration with the will annexed in this state. By section 19 of the same act, it was provided that whenever a sole executor or the survivor of several executors shall die, leaving goods of the estate of his testator unadministered, the registrar shall, notwithstanding the executor may have made his last will and testament and appointed an executor or executors thereof, grant letters of administration of all such goods and estate in the same manner as if such executor had died without having made any testament or last will, and the executor of such deceased executor shall in no case be deemed executor of the first testator.

Of this act it was said by DEAN, J., in Shinn's Estate, 166 Pa. 121, that " it was found inconveniently rigorous," so that it was amended by a series of exempting acts providing for the transfer of investment securities by the person representing the estate of the owner according to the law of his domicil. The first of these acts which we have to consider appears to be the Act of June 16, 1836, P. L. 682, section 3, which declared that so much of the 6th section of the act of March 15, 1832, as provides that no letters testamentary or of administration or otherwise, purporting to authorize any person to intermeddle with the estate of a decedent, which may be granted out of this commonwealth, shall confer upon such person any of the powers and authorities possessed by an executor or administrator under letters granted within this state, and so much of the 7th section of the act of March 29, 1832, as provides that no appointment of a guardian made or granted out of this state shall

authorize the person so appointed to interfere with the estate of a minor in this state, are declared and enacted not to apply to shares of stock in any bank or other incorporated company within this commonwealth, but such shares of stock shall pass and be transferable, and the dividends thereon be receivable in like manner and under the same regulations, powers and authorities as were used and practiced with the loans or public debt of the United States and of this commonwealth before the said recited acts were passed, unless the by-laws, rules and regulations of any such bank or corporation shall otherwise provide and declare.

On January 29, 1872, the Supreme Court decided in Alfonso's Appeal, 70 Pa. 347, that executors acting under authority conferred by a foreign country cannot transfer stock, in this state, but that executors appointed by a sister state may, and thereupon the Act of April 8, 1872, P. L. 44, was enacted, as was said by SHARSWOOD, J., in Williams v. Penna. R. Co., 9 Phila. 298, no doubt in consequence of this decision. That act provides that " it shall and may be lawful for an executor, administrator or other person representing the estate of any decedent, or for any guardian or other legal representative of the estate of a minor, acting under letters testamentary or of administration, or other authority granted by or under the laws of any other state or territory of the United States, or of any country, state, sovereignty or kingdom, to transfer any and all shares of stock and registered loan, or either, of any incorporated company of this commonwealth, standing in the name of any decedent, minor or cestui que trust, and to receive the dividends and interest thereof, whenever a duly authenticated copy of the will, or other grant of authority under which such transfer or receipt is proposed to be made, shall have been filed in the office of the register of wills for the county in which such incorporated company has its transfer office or principal place of business."

It is to be noticed that this act confers authority upon any executor, administrator or other person representing the estate of any decedent, or any guardian, acting under letters testamentary, of administration, or other authority granted by or under the laws of any other state or territory of the United States, or of any country, state, sovereignty or kingdom.

Indicative of the intention of the legislature are the various acts on this subject, to be found in the 12th edition of Purdon's Digest, on pages 589 and 590, to wit: the Act of March 12, 1842, P. L. 67, section 5, declaring that the act of 1832 shall not apply to the stock or loan of the city or county of Philadelphia; the Act of May 15, 1850, P. L. 767, section 8, declaring that the act of 1832 shall not apply to the loans of any incorporated company within this commonwealth, but that such stock or loans shall pass and be transferable and the interest thereon receivable, in like manner as before said acts were passed (that is, by the executor of an executor, in cases where the appointment of an administrator de bonis non cannot be obtained), and the Act of May 15, 1874, P. L. 195, permitting the transfer of the loans of this commonwealth and the city of Philadelphia, by the person or persons duly authorized by the laws of the state or country in which the foreign bondholder was domiciled or resided at the time of his death; provided an affidavit is filed with the clerk of the orphans' court that the decedent is not indebted to any person within this commonwealth. All this legislation has been passed for the purpose of facilitating the transfer of public and corporation loans and stocks, in pursuance of the policy which actuates commercial nations in such matters. In order to induce persons residing outside of this state to invest their capital in business enterprises here, the legislature has enacted these statutes to permit a transfer upon the death of the owner, to be made according to the law of his domicil, without putting his representatives to the inconvenience, expense and delay of administration here.

By the case stated we are informed that George Lund, a resident and citizen of England, died on June 5, 1888, leaving by his will all his personal estate to his widow, Mary Ann Lund, and appointed her his sole executrix. She died on May 20, 1897, in England, and by her will bequeathed her residuary estate to her daughter, Mary Ann Grimes, and appointed her sole executrix. Copies of these wills and grants of letters testamentary thereon have been filed in the office of the register of wills in this county. George Lund owned 510 shares of the stock of the Pennsylvania Railroad Company, and during the life of his widow and executrix she received the dividends thereon. By the law of England the plaintiff, as executrix of Mary Ann

Lund, the executrix of George Lund, deceased, is the legal representative of the unadministered estate of George Lund, deceased, and as executrix of his executrix is entitled, under the law of England, to transfer shares of stock and other securities standing in the name of George Lund, and by reason of that law, the chief registrar of the principal registry of the probate, divorce and admiralty division of the high court of justice of England, has declined to grant letters of administration de bonis non cum testamento annexo to the plaintiff in England, saying that the same are unnecessary. The plaintiff has demanded of the defendant company a transfer by her, as executrix of Mary Ann Lund, executrix of George Lund, deceased, of the said 510 shares of stock, but the defendant company has refused to permit any person other than an administrator d. b. n. c. t. a. of the estate of George Lund, appointed in England or in Pennsylvania, to make the transfer, and the question is, under what law is the power to make the transfer to be derived?

We are of opinion that the act of 1872, being a remedial statute, should receive a liberal construction in aid of the relief given. It was intended to relieve the representatives of the owners of loans and stocks, who are authorized by the law of the state or country in which such owners lived and died, from the necessity of taking out letters of ancillary administration in this state, and to permit such representatives to transfer such loans and shares the same as if they derived their authority under the law of this state; and that the inquiry for the person representing the estate of any decedent should be for the person representing such estate according to the law of the domicil of the deceased owner, and not the law of this state. The 19th section of the act of 1832 is not repealed as to the ordinary goods and chattels of the estate of a nonresident, but it is superseded as to his investments in public and corporation bonds and stocks within this commonwealth by the several acts before cited; and as to such loans or stocks the power to transfer them is derived from the grant under the law of the domicil of the decedent. As to our citizens the law is that the executor of an executor cannot make such a transfer, because we have provided a person to take his place; but as there is no provision for an administrator de bonis non in England, when there is an executor of an executor, who is the person representing the estate

of the decedent and has authority to transfer the shares of the first
testator there, the executor of the executor should be permitted
to make the transfer here.   We are required to give these acts
a reasonable interpretation so as to facilitate and not impede the
transmission of the property.

No case could show the necessity of such an interpretation
as the one before us.   Here the testator has been dead ten
years.   His widow, as legatee, owner and executrix, has re-
ceived the dividends since his death.   Now his daughter is
legatee, owner and executrix, and it is contended that she can-
not receive the dividends or transfer the shares without being
put to the expense of an administration, involving the giving
of security to a large amount, and the settlement of an account
and distribution by the orphans' court, with an attendant in-
convenience and delay.   No question as to domestic creditors
is involved, because the legislature, by enacting that foreign
executors and administrators may make the transfer, has dis-
regarded any rights of local creditors as to public and corpora-
tion loans and shares of stock, except that the act of 1874
requires an affidavit that the decedent is not indebted here.
As the plaintiff in this case is the person representing the estate
of the decedent and is duly authorized by the law of England,
where the decedent was domiciled and his will was proved,
she is entitled to make the transfer she desires to make.

Judgment for plaintiff according to the terms of the case
stated.

*Error assigned* was entry of judgment for plaintiff on cases
stated.

*John G. Johnson*, for appellant, cited Williams on Executors,
* 254; McCullough v. Young, 1 Binney, 63; Mothland v. Wire-
man, 3 P. & W. 185 ; Alfonso's App., 70 Pa. 347 ; Williams
v. Penna. R. Co., 9 Phila. 298; Moore v. Fields, 42 Pa. 471.

*J. Rodman Paul*, for appellee, cited Graeme v. Harris, 1
Dall. 456 ; McCullough v. Young, 1 Binn. 63 ; Shinn's Estate,
166 Pa. 121; Alfonso's App., 70 Pa. 347 ; Mothland v. Wire-
man, 3 P. & W. 185.

PER CURIAM, January 30, 1899:

The questions presented by the "case stated" were correctly decided by the learned president of the court below, and judgment was accordingly entered in favor of the plaintiff. There appears to be nothing in the questions involved that requires special notice or further discussion.

The judgment is affirmed on the opinion sent up with the record.

Judgment affirmed.